In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3195

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY L. FLETCHER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-CR-10043—**Michael M. Mihm**, *Judge*.

ARGUED MAY 29, 2009—DECIDED FEBRUARY 10, 2011

Before RIPPLE, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Anthony L. Fletcher was convicted following a jury trial of production of child pornography, *see* 18 U.S.C. § 2251(a), attempted production of child pornography, *see* 18 U.S.C. § 2251(a),(e), and possession of child pornography, *see* 18 U.S.C. § 2252A(a)(5)(B), (b)(2). On the three counts of conviction the district court sentenced Fletcher to a total of 480 months' imprisonment to be followed by concurrent life terms of supervised

release. One hundred and twenty months of Fletcher's prison term are to run concurrently with state convictions in McClean County, Illinois for related crimes. Fletcher appeals, primarily challenging his conviction for production of child pornography under § 2251 (Count I). Fletcher also objects to the government's alleged "piggy-backing" of his prosecution on the McClean County prosecution for similar conduct and challenges the government's handling of certain evidence before trial as well as the district court's refusal to dismiss a particular juror for cause. We affirm.

## I.

Fletcher's conviction for attempted production of child pornography (Count II) stemmed from separate incidents in Decatur and Bloomington, Illinois. In 2005, Fletcher was living in Decatur. In June of that year he offered a 14-year-old named Mary Beth a ride to her boyfriend's house. Instead, he took Mary Beth to his own home, where he invited her inside and offered her a job airbrushing and ironing designs on t-shirts. She accepted the job and returned the following day with her friend, Amanda, who also said she would work for Fletcher. Amanda was 16 or 17 years old. Fletcher told both girls that he needed to videotape an interview with them; he told Mary Beth to lie on the tape and state her age as 17 so that he could not be accused of employing someone underage. She complied.

The girls worked for Fletcher for between one and two months that summer. Fletcher showed them pictures of

women engaged in sexually explicit conduct every day they were at his home. He also repeatedly asked them to have sex with each other and to allow him to take nude photos of them, but they both refused. After approximately six weeks, he offered them alcohol and gave them money to buy marijuana. They smoked the marijuana and drank while they were "working." In August 2005, Fletcher gave Mary Beth a shirt and skirt and took photos of her wearing them while he instructed her to pose and lower the skirt provocatively.

By 2006, Fletcher had moved to Bloomington, where he lived across the street from a girl named Alyssa. He talked to Alyssa and her 14-year-old friend, Britney, and invited them to his house to have some clothing airbrushed. Once there, Fletcher showed them photos of naked girls and asked them if he could videotape them having sex or take nude photos of them. When they returned another day to pick up the airbrushed clothing he had promised them, Britney stayed alone with Fletcher and accompanied him to his room to use his computer. Once there Fletcher put Britney on his lap and asked her repeatedly to have sex with him. She refused and eventually left.

The production and possession of child pornography charges (Counts I and III) were based on conduct in Bloomington later that same year. In April, Fletcher approached Britney's sister Heather and her friend Alena and extended his now-familiar invitation for the girls to come inside his home and see some airbrushed clothing. He showed them some clothing and Heather

told him she was 16. Alena, who was 14, told Fletcher that she was 15 and also gave him her phone number. Fletcher offered to give them airbrushed clothing in exchange for housecleaning.

The girls returned the following day and he offered them alcohol and marijuana. Heather accepted and was soon intoxicated. They both spent the night at Fletcher's house and slept in his bed with him, where he had sex with Alena and fondled Heather. They returned two days later on a Sunday afternoon in April 2006. That day Fletcher again gave the girls alcohol and marijuana. He began taking pictures of them and offered them clothes to try on for photos. He gave Alena something see-through to wear and gave Heather shorts that were too small to be buttoned. They posed in the clothes in his bedroom, where he photographed them in sexually suggestive poses and took photos focusing on their genitals and pubic areas. He then videotaped himself having sex with Alena. Although Fletcher cannot be identified from the tape, Heather testified that she walked into the room and saw the two of them.

Five other men were present at Fletcher's home at different times throughout the day. One of them, Lavell Harris, Jr., was in the bedroom while Fletcher photographed Heather and Alena, and he appears in several of the photos. He asked Heather and Alena at some point how old they were, and when they responded that they were 16 and 15, respectively, he said to Fletcher and another man standing in the doorway (Tyrone Foy), "You all going to jail." Heather and Alena finally left

around 10 p.m. that night. Around midnight that same night, someone connected the camera to a computer at Fletcher's home and viewed the photos of Heather and Alena.

The following day Heather told her probation officer what had happened at Fletcher's home. When the probation officer told Heather that it was necessary for him to call the police, Heather called Alena and told her as much. Alena, in turn, called Fletcher to let him know the police would be coming. When she was interviewed by police later that day, Alena said that Fletcher had not taken pictures of her.

That afternoon, officers executed a search warrant at Fletcher's home. They seized a Fuji camera and three digital memory cards (one in Fletcher's pocket and one in a seized computer). They also took a computer and a number of compact discs, which were later found to contain child pornography. Although the images of Heather and Alena had been deleted from the camera memory card before the police arrived, a computer expert was able to retrieve the data and reproduce the deleted images.

In July 2007, Fletcher was charged in a superseding indictment with attempted production of child pornography (Britney, Alyssa, and other minors in 2005 and 2006), production of child pornography (Heather and Alena in 2006), and possession of child pornography. At trial, Fletcher represented himself with the assistance of standby counsel. The government presented testimony from Britney, Heather, Alena, and several other girls

Fletcher had importuned for nude photos or sex. Three of the men present at Fletcher's home while Heather and Alena were there in April 2006 also testified. The jury also heard from officers who executed the search warrant, digital media experts, and a pediatrician who opined as to the ages of the girls in certain photographs. Fletcher did not testify. His theory of defense was that someone else with access to his camera and computer created the child pornography. He called a former police officer as an expert, who testified that investigators should have preserved potential trace evidence such as fingerprints that may have supported Fletcher's theory of defense. At the close of the government's case-in-chief, Fletcher moved for a judgment of acquittal based on the officers' alleged mishandling of the evidence, but the district court denied his motion.

On the production of child pornography charge (Count I), 18 U.S.C. § 2251, the district court concluded over Fletcher's objection that the government need not prove as an element of the offense that Fletcher knew that the victims were minors. The court also ruled that Fletcher could not rely on the affirmative defense that he did not know Heather and Alena were minors— a defense Fletcher alluded to when he cross-examined the girls and accused them of telling him that they were 18. On the remaining counts (attempted production and possession of child pornography), the court instructed the jury that it must find beyond a reasonable doubt that Fletcher knew the girls were minors. Fletcher was convicted on all counts. Fletcher filed a number of post-trial motions. As relevant here, he moved for a judgment

of acquittal based on the government's alleged failure to follow its own policy against successive state and federal prosecutions for similar crimes. His motion relied on his convictions for related crimes in McLean County, which preceded the grand jury's return of the federal superseding indictment by just two months. The district court denied all of Fletcher's post-trial motions. Fletcher appeals.

## II.

We begin with Fletcher's arguments regarding the construction and validity of § 2251. First, he maintains that Congress intended the statute to contain a scienter element such that the district court should have instructed the jury that the government bore the burden of proving beyond a reasonable doubt that Fletcher knew that Alena and Heather were minors. If we conclude that there is no such requirement in the statute, Fletcher maintains that it is unconstitutional on its face and as applied unless it is read to allow a defendant to raise mistake-of-age as an affirmative defense. We consider Fletcher's arguments in turn.

We may dispatch quickly with Fletcher's contention that § 2251 requires the government to prove a defendant's knowledge of the victim's age. As relevant here, section 2251(a) provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who

transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e)[.]

18 U.S.C. § 2251(a).

Contrary to Fletcher's assertion that Congress intended to include a knowledge requirement as to the victim's age, there is direct evidence that it expressly considered and rejected such a requirement. As explained in the House Conference Report:

The Senate Bill contains an express requirement in proposed section 2251(a) that the crime be committed 'knowingly.' The House amendment does not. The Conference substitute accepts the House provision *with the intent that it is not a necessary element of a prosecution that the defendant knew the actual age of the child.*

H.R. Rep. No. 95-811, at 5 (1977) (Conf. Rep.) (emphasis added); *see also* S. Rep. No. 95-601, at 5 (1977). This change conformed to the response of the Justice Department to an earlier version of the proposed legislation. The Justice Department pointed out that the word "knowingly" in § 2251 should be removed so that the bill would not be "subject to an interpretation requiring the Government to prove the defendant's knowledge . . . [of]

the age of the child." S. Rep. No. 95-438, at 23 *reprinted in* 1977 U.S.C.C.A.N. 40.

The Supreme Court has likewise concluded, albeit in dicta, that § 2251(a) contains no knowledge requirement as to the victim's age. The Court referenced the legislative history above when interpreting 18 U.S.C. § 2252, which prohibits "knowingly" shipping, receiving, or distributing images of minors engaging in sexually explicit conduct. In contrasting § 2252 with § 2251(a), the Court pointed out that in 1977 when Congress amended the two statutes "the new bill retained the adverb 'knowingly' in § 2252 while simultaneously deleting the word 'knowingly' from § 2251(a)." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 (1994). This deletion was intended to reflect Congress's " 'intent that it is not a necessary element of a prosecution [under § 2251(a)] that the defendant knew the actual age of the child.' " *Id.* (quoting S. Rep. No. 95-601, at 5 (1977)). The Court observed that such an omission made sense in light of "the reality that producers are more conveniently able to ascertain the age of performers." *Id.* at 77 n.5. Although Fletcher points out that the Supreme Court in *X-Citement Video* did not specifically consider § 2251(a) in light of the 1984 amendments (which had already passed when the case was decided), he fails to identify anything about those amendments that would alter our analysis.

Citing *X-Citement Video*, we too have noted that knowledge of the performer's age is not an element of a prosecution for production of child pornography under § 2251(a). *See United States v. Johnson*, 376 F.3d 689, 693 (7th

Cir. 2004) ("It is true that the commission of the completed offense under § 2251(a) . . . contains no requirement that the defendant know that the performer is a minor."). This conclusion is in line with every circuit to have considered the issue. *See United States v. Pliego*, 578 F.3d 938, 943 (8th Cir. 2009) (district court did not abuse discretion in refusing to instruct jury that knowledge of victim's age is an element of § 2251(a)); *United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009) ("[K]nowledge of the victim's age is [not] . . . an element of the offense[.]"); *United States v. Deverso*, 518 F.3d 1250, 1257 (2008) (same); *United States v. Griffith*, 284 F.3d 338, 349 (2d Cir. 2002) (rejecting defendant's argument that district court erred by omitting scienter of age in jury instructions for § 2251(a) prosecution); *United States v. U.S. Dist. Court*, 858 F.2d 534, 538 (9th Cir. 1988) ("The defendant's awareness of the subject's minority is not an element of the offense."). We thus reject Fletcher's claim that knowledge of the victim's age is an element of the offense. Accordingly, the district court properly refused Fletcher's request to instruct the jury as much.

Nor are we persuaded by Fletcher's argument that § 2251(a) violates his right to equal protection if it is read without the scienter element that he proposes. Fletcher maintains that by targeting producers of child pornography for strict liability Congress has created an irrational and arbitrary distinction between those cases involving the sexual exploitation of children where knowledge of the victim's age is an element of the offense and those where it is not. But this argument goes nowhere. Those statutes requiring knowledge of a

victim's age—receiving, distributing, or possessing child pornography—are all readily distinguishable from the production of child pornography, where "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *X-Citement Video*, 513 U.S. at 72 n.2; *see also U.S. Dist. Court*, 858 F.2d at 544 ("Those who arrange for minors to appear in sexually explicit materials are in a far different position from those who merely handle the visual images after they are fixed on paper, celluloid or magnetic tape."). Thus, Congress clearly had a rational basis for singling out producers of child pornography for strict liability. *Cf. Canto v. Holder*, 593 F.3d 638, 641 (7th Cir. 2010) (Congress had rational reason for differing definitions of "aggravated felony" in Immigration Code).

Fletcher next argues that if the government need not prove knowledge of age to convict, the statute cannot withstand constitutional scrutiny unless we read in a mistake-of-age defense. As discussed above, no such defense is included in the text of the statute, and the legislative history makes clear that none was intended. Fletcher asserts, however, that without the defense the statute chills conduct protected by the First Amendment—namely, the creation of non-obscene pornography featuring adult actors who may appear young. The government counters that we need not reach the argument because Fletcher neither formally presented a mistake-of-age defense, nor would he qualify for one. However, as the government must acknowledge, the First Amendment overbreadth doctrine is one of the few exceptions to the ordinary rule that "a person to

whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court." *New York v. Ferber*, 458 U.S. 747, 767 (1982). The overbreadth doctrine allows an individual whose conduct could be constitutionally regulated by a statute drawn with the requisite specificity to nevertheless attack the statute in light of the danger that it may chill protected expression by those who fear criminal sanctions. *Id.* at 768 n.21.

In *Ferber,* the Supreme Court considered a New York statute prohibiting the knowing promotion of a sexual performance of a child by distributing material depicting such a performance. *Ferber*, 458 U.S. at 749. Noting the "surpassing importance" of the state's interest in preventing sexual exploitation and abuse of minors, the Court concluded that States "are entitled to greater leeway in the regulation of pornographic depictions of children." *Id.* at 756-57. The Court thus concluded that child pornography is unprotected by the First Amendment and that the state statute permissibly attacked the problem of sexual abuse of children by punishing the distribution of child pornography. *Id.* at 765-66. The Court in *Ferber* also rejected the defendant's overbreadth challenge to the statute, concluding that the statute's legitimate reach outweighed any potential it may have had to chill distribution of protected material. *Id.* at 773.

As explained in *Ferber*, an overbroad statute must reach a "*substantial* number of impermissible applications" before it may be considered facially invalid. *Id.*

at 771 (emphasis added). Thus, the relevant question for us is whether § 2251 as written risks chilling such a substantial amount of protected conduct that the absence of a mistake-of-age defense outweighs the government's indisputably compelling interest in protecting children from the documented ills of child pornography.

Only one court to have considered the question has deemed it necessary to read a mistake-of-age defense into the statute. Not surprisingly then, Fletcher relies almost entirely on the Ninth Circuit's opinion in *United States v. U.S. District Court*, wherein a divided panel concluded in a mandamus action that the defendant must be allowed to present a narrow mistake-of-age defense at his trial for violating § 2251(a). *See* 858 F.2d at 543-44. The United States sought a writ of mandamus to prevent the defendant from presenting evidence that the sixteen-year-old girl appearing in a pornographic film had deceived the entire adult entertainment industry with false official documents, her physical appearance, "apparent sexual experience," and prior and subsequent appearances in other X-rated films distributed nationally.[1] *Id.* at 540. The majority in *United States v. U.S. District Court* thought that without

---

[1] The child performer in *U.S. District Court* was Traci Lords, who made somewhere between 80 and 100 X-rated movies while she was a minor. "An incredibly developed, full-figured girl, she easily duped photographers, producers and directors (with the help of a false birth certificate and driver's license)." *The Internet Movie Database*, http://www.imdb.com/name/nm0000183/bio (last visited Dec. 28, 2010).

a mistake-of-age defense, § 2251(a) would deter producers of adult pornography from creating films with youthful adult actors. This in turn would frustrate both youthful-looking adult actors' attempts to find work and stifle the ability of audiences seeking pornography with young-looking actors to find it. *Id.*

We are mindful of the Court's caution to avoid strict liability when it has the "collateral effect of inhibiting the freedom of expression." *Smith v. State of Cal.*, 361 U.S. 147, 151 (1959). Nonetheless, for the reasons discussed below we conclude, like every other circuit to have considered the question but the Ninth, that the statute survives constitutional scrutiny without a mistake-of-age defense.

First, we reject Fletcher's contention that the Constitution necessarily requires a scienter element as to the age of the victim. Fletcher points to the general rule that a statute without a scienter element raises serious constitutional doubts. But as both the Supreme Court and our sister circuits have noted, the production of child pornography may be analogized to those sex offenses, like statutory rape, that have traditionally been exempted from the common-law presumption of mens rea. *See X-Citement Video*, 513 U.S. at 72 n.2 (citing *Morissette v. United States*, 342 U.S. 246, 251 n.8 (1952) (exempting from mens rea requirement "sex offenses, such as rape" where victim's actual age is determinative despite defendant's "reasonable belief" that victim has attained age of consent)); *United States v. Wilson*, 565 F.3d 1059, 1068 (8th Cir. 2009) ("[T]he background assumption of *mens*

*rea* is inappropriate for some strict liability sex crimes, such as statutory rape."). As discussed above, it makes sense that the knowledge requirement would differ for those crimes, like statutory rape and the production of child pornography, where the perpetrator confronts his victim directly. *See Gilmour v. Rogerson*, 117 F.3d 368, 372 (8th Cir. 1997) ("Unlike most distributors, the sexually exploitive producer deals directly with the child victim, like the statutory rapist who has traditionally been denied a mistake-of-age defense."); *see also X-Citement Video*, 513 U.S. at 72 n.2 ("The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver."). Thus, the producer of child pornography, like the statutory rapist who confronts his victim directly, may be expected to be accountable for ascertaining the victim's age.

Second, the compelling nature of the interest in protecting children from exploitation supports putting the risk of error on producers. As should be self-evident, protecting children from sexual exploitation and abuse is a governmental objective of critical importance. *See, e.g., Ferber*, 458 U.S. at 758 & n.9 (citing numerous legislative and literary findings detailing harmful effects attendant to the use of children in pornography); *United States v. Pugh*, 515 F.3d 1179, 1197-98 (11th Cir. 2008) (recognizing that "Congress repeatedly has stressed the terrible harm child pornography inflicts on its victims"); *Johnson*, 376 F.3d at 695 (citing *Ferber*). Even more than the passive viewer of child pornography, the creator of such material not only contributes to but is directly

responsible for the exploitation of the child victim. Thus, § 2251(a) targets the very source of the harm. Recognizing a mistake-of-age defense would clearly be at odds with this compelling government objective. Moreover, Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from "self-destructive decisions" that would expose him or her to the harms of child pornography. *Malloy*, 568 F.3d at 175; (citing *Gilmour*, 117 F.3d at 372).

With this in mind, we are hard-pressed to conclude that the plainly legitimate sweep of the statute is outweighed by the *possibility* that the production of some protected pornography may be chilled. *See Osborne v. Ohio*, 495 U.S. 103, 112 (1990). For his part, Fletcher has presented no evidence that legitimate producers of pornography (which he was not) are deterred by the existence of strict liability statutes like § 2251(a). Additionally, the economic incentive for producers of adult pornography serves to reduce any chilling effect the statute may have. *See Ferber*, 458 U.S. at 772 (noting possibility that individual with "economic incentive" is less likely to be deterred than "the employee who wishes to engage in political campaign activity"); *Malloy*, 568 F.3d at 176 ("[P]roducers of adult pornography who wish to use youthful-looking subjects will not be deterred by § 2251(a) for profit reasons: pornography is lucrative. High demand creates powerful incentives that will not be inhibited by a slim chance of prosecution."). And although the theoretical possibility exists that every diligent attempt at age verification may fail, we think such a risk is small and does not create a "substantial" burden on protected

expression. *See Gilmour*, 117 F.3d at 372-73 ("In this infor-
mation age, a prudent photographer or movie producer
may readily and independently confirm the age of
virtually every young-looking model."); *Malloy*, 568 F.3d
at 176 n.6 ("While it is certainly true . . . that documents
can be forged . . . the originals exist somewhere . . . and
the producer of pornography, because he has direct
contact with the subject, has access to the original docu-
ments[.]") (citing dissenting opinion in *U.S. Dist. Court*, 858
F.2d at 540). Furthermore, legitimate producers of
adult pornography are unlikely to be deterred merely by
the fact that they must verify an actor's age—they are
*already* required to do so now. 18 U.S.C. § 2257(b)(1)
(requiring a producer of pornography to "ascertain, by
examination of an identification document containing
such information, the performer's name and date of
birth"); *X-Citement Video*, 513 U.S. at 77 n.5 (noting that
"Congress has independently required both primary
and secondary producers to record the ages of performers
with independent penalties for failure to comply").
Finally, most individuals targeted for prosecution
under § 2251(a) are those who, like Fletcher, are either
well-aware of the victim's minority or failed to undertake
any serious effort to ascertain the victim's age. *Malloy*,
568 F.3d at 176 (noting that because children de-
picted in child pornography frequently cannot be found,
prosecutors must rely on pictures to show that subject is
a minor and therefore prosecute those cases where
the subject is "unmistakably a child").

    Given the competing social factors on both sides, we
believe that § 2251 withstands constitutional scrutiny

without a mistake-of-age defense. Particularly when judged in relation to the legitimate sweep of the statute, we consider it unlikely that pornography production will be *substantially* chilled in the narrow subset of pornography featuring "youthful" appearing actors. After considering the social costs on both sides and the lack of evidence that the statute will significantly impact legitimate producers of adult non-obscene pornography, it is not difficult to conclude that the scales tip in favor of providing the most protection possible for minors by requiring strict liability as to the age of the subject. *See United States v. Williams*, 553 U.S. 285, 292 (2008) (overbreadth doctrine "seeks to strike a balance between competing social costs"). For the foregoing reasons, we join every other circuit to have considered the issue since the Ninth Circuit decided *United States v. U.S. District Court* and conclude that the First Amendment does not mandate a mistake-of-age defense to prosecutions under § 2251(a). *See United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010) (First Amendment concerns do not require engrafting mistake-of-age defense onto § 2251(a)); *Malloy*, 568 F.3d at 173 (concluding that "no reasonable mistake of age defense is constitutionally required" under § 2251(a)); *Pliego*, 578 F.3d at 943-44 (rejecting Ninth Circuit's rationale for mistake of age defense and concluding that First Amendment does not require such a defense); *Deverso*, 518 F.3d at 1258 ("[T]he Constitution does not mandate a mistake of age defense under § 2251."); *United States v. Crow*, 164 F.3d 229, 236 (5th Cir. 1999) (defendant's "assertion that section 2251(a) is unconstitutional because it lacks a scienter requirement is meritless").

Fletcher next contends that the district court erred when it denied his motion for judgment of acquittal based on the government's alleged violation of its "*Petite* policy." *See Petite v. United States*, 361 U.S. 529 (1960) (per curiam). Memorialized in the U.S. Attorneys' Manual, the so-called *Petite* policy is a Justice Department policy prohibiting successive state and federal prosecutions for the same crime except when necessary to vindicate a compelling federal law enforcement interest and then only after an Assistant Attorney General has approved the prosecution. *See U.S. Attorneys' Manual*, § 9-2.031 Dual and Successive Prosecution Policy ("Petite Policy"); *Rinaldi v. United States*, 434 U.S. 22, 25 n.5 (1977) (describing *Petite* policy). The policy was formulated in response to the dual sovereign doctrine allowing separate Federal and State prosecutions for the same criminal act. *See Rinaldi*, 434 U.S. at 28-29 (citing *Bartkus v. Ill.*, 359 U.S. 121 (1959) & *Abbate v. United States*, 359 U.S. 187 (1959)).

Shortly before the federal grand jury returned its superseding indictment, Fletcher was convicted in McClean County of two counts of aggravated criminal sexual abuse, 720 ILCS 5/12-16(d), and two counts of child pornography, 720 ILCS 5/11-20.1(a)(1). The state court indictments reveal that the child pornography counts were based on charges that he knowingly photographed Heather and Alena in acts of masturbation and sexual intercourse, respectively.

The government disputes whether Fletcher waived his argument because his motion for judgment of acquittal was untimely (it was not, once the prison mailbox rule

is applied) and also makes much of whether there is enough information in the record to assess whether it in fact violated its *Petite* policy. But Fletcher's argument fails for the more straightforward reason that, as an internal prosecutorial guideline, the *Petite* policy "does not create a substantive right for the defendant which he may enforce, and is not subject to judicial review." *United States v. Mitchell*, 778 F.2d 1271, 1276-77 (7th Cir. 1985) (collecting cases).

Fletcher relies heavily on *Rinaldi*, where the Supreme Court did remand a case to the district court with instructions to dismiss because the government violated its *Petite* policy. *Rinaldi*, 434 U.S. at 32; *see also Petite*, 361 U.S. at 530-31 (vacating and remanding for dismissal of indictment on government's motion). But *Rinaldi* does not help Fletcher, because there the government itself had acknowledged the *Petite* violation and moved to dismiss the indictment under Fed. R. Crim. P. 48(a). *Rinaldi*, 434 U.S. at 25. The Court concluded that "[t]he defendant . . . should receive the benefit of the policy *whenever its application is urged by the Government*." *Id.* at 31 (emphasis added). Here, the government has urged no such action on Fletcher's behalf. Thus, as things stand, the district court did not abuse its discretion by denying Fletcher's motion for a judgment of acquittal. *See Mitchell*, 778 F.2d at 1277.

We, note, however, our concern that a *Petite* violation may have occurred here. Despite the government's protestations that from the record it is "impossible to know" whether a *Petite* violation occurred, it certainly appears that Fletcher's prosecution for production and

possession of child pornography (Counts I and III) may have run afoul of the policy.

The government complains that Fletcher's reference to his convictions on the Illinois Department of Corrections website (which lists convictions for "Child Porn/Film/Tape/Photo/Act") does not provide enough information to ascertain whether the state and federal convictions overlap. In response, Fletcher asks that we take judicial notice of his indictments in McClean County, which he submitted with his reply brief. As detailed above, the indictments charge that he photographed both Alena and Heather engaged in sexually explicit behavior. Thus, despite the government's posited differences between his federal and state convictions, it is difficult to believe that his federal convictions did not implicate the *Petite* policy, which does not demand exact overlap. It applies to any prosecution that follows a "prior state or federal prosecution based on substantially the same act(s) or transaction(s)." *U.S. Attorney's Manual* at § 9-2.031; *see also Thompson v. United States*, 444 U.S. 248 (1980) (per curiam) (describing "firmly established policy" forbidding U.S. Attorneys from prosecuting any person whose "alleged criminality was an ingredient of a previous state prosecution").

Moreover, the government's asserted ignorance about whether the prosecutions in fact overlapped begs the question of whether it undertook the proper investigation before instigating the federal prosecution. Thus, we urge the government to look into the matter, and act accordingly if Fletcher's federal convictions do indeed

run afoul of the *Petite* policy, which serves an important function in "protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct." *Rinaldi*, 434 U.S. at 27; *see id.* at 29 n.14 (quoting an Attorney General's observation that in the area of state and federal prosecutions for similar conduct "those of us charged with law enforcement responsibilities have a particular duty to act wisely and with self-restraint").[2]

Given the established precedent that adherence to the *Petite* policy is neither constitutionally required nor does it create an enforceable right for a defendant, we likewise reject Fletcher's due process and equal protection challenges. Both are grounded in the alleged *Petite* policy violation, and neither of his arguments provide grounds for us to revisit our settled holding. Fletcher's undeveloped equal protection claim also does not survive when construed as an accusation of selective prosecution. To succeed, it would be necessary for Fletcher to show that he was both singled out for prosecution where others were not and that the selection was based on an impermissible ground, such as race or religion. *United States v. Darif*, 446 F.3d 701, 708 (7th Cir. 2006). Despite a bare assertion that it is "arbitrary and irrational" that some individuals may avoid prosecution if the *Petite* policy is adhered to, Fletcher produces no evidence that he was singled out or that his prosecution

---

[2] We expect that the government will keep us apprised of the results of its investigation into the potential *Petite* violation.

was otherwise unlawful. *See Mitchell*, 778 F.2d at 1277 (rejecting defendant's claim of selective prosecution based on alleged *Petite* policy violation).

Fletcher next claims that his due process rights were violated when investigating officers failed to preserve allegedly exculpatory evidence. At the close of the government's case-in-chief, the district court denied Fletcher's oral motion for a judgment of acquittal based on the alleged failure to preserve evidence. Fletcher bases his claim on the officers' handling of the digital evidence obtained when they executed the search warrant in his home. During its search, the government seized a computer, a Fuji digital camera, three memory cards from the camera, and many compact discs. One of the camera memory cards was in Fletcher's pocket. Although officers wore gloves during the search to preserve possible trace evidence, later when they examined the seized evidence they did not wear gloves or attempt to preserve fingerprints or other trace evidence on the surface of the seized items. When questioned at trial about the failure to preserve possible trace evidence, the lead detective explained that in light of Heather's accusations that Fletcher had taken the photographs and committed the sexual abuse there was no need to preserve possible trace evidence. In his words, the case was not a "who-did-it type case."

At trial, Fletcher presented expert testimony from Wayne Lapen, a former officer with the Peoria Police Department who helped found that department's Cyber Crimes Unit. Officer Lapen opined that the officers in-

volved should have collected trace and fingerprint evidence "as a matter of course" and that their failure to do so "compromised" the seized evidence.

When a defendant alleges, like Fletcher, that the government failed to preserve potentially exculpatory evidence, we apply the standard articulated in *Arizona v. Youngblood*, 488 U.S. 51 (1988). *Youngblood* applies when, as here, the government failed to preserve evidence that "*could* have been subjected to tests, the results of which *might* have exonerated the defendant." *Youngblood*, 488 U.S. at 57 (emphasis added); *see also United States v. Kimoto*, 588 F.3d 464, 474-75 (7th Cir. 2009) (citing *Youngblood* in articulating applicable inquiry for a claim that the government destroyed potentially useful information versus a *Brady* claim of withholding exculpatory evidence). In that situation, there is no denial of due process "unless a criminal defendant can show bad faith on the part of the police." *Youngblood*, 488 U.S. at 57-58. Thus, Fletcher must show: (1) bad faith by the government, (2) the exculpatory nature of the evidence was apparent before its destruction, and (3) that he could not obtain the same evidence anywhere else. *Kimoto*, 588 F.3d at 475; *Hubanks v. Franks*, 392 F.3d 926, 931 (7th Cir. 2004) (citing *Youngblood*, 488 U.S. at 58).

Fletcher's argument fails on both the first and second prongs. As for showing bad faith, Fletcher demonstrates at best that the government may have been careless when officers failed to consider the possibility that potential trace evidence may have been useful to Fletcher's defense. As the district court recognized, it

was inappropriate for the government to jump to the conclusion that the accusations against Fletcher *eliminated* the possibility that someone else in Fletcher's house committed the crimes. But bad faith requires more than carelessness, it requires a "conscious effort to suppress exculpatory evidence." *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000) (quoting *Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992)). Fletcher presents no evidence of such an effort; instead, he asks us to presume that the government's failure to anticipate that he would argue that someone else committed the crimes equates to bad faith on its part. We are unwilling to so. Although we are disappointed by the government's failure to preserve all of the evidence that may have assisted Fletcher, he has not shown that its failure to do so here amounted to a willful effort to hide helpful evidence.

Likewise, there is no indication that the government knew that there may have been exculpatory evidence on the digital media before it handled the seized items without gloves. Indeed, even now nothing in the record suggests that there were actually fingerprints that would have exculpated Fletcher. Despite Fletcher's attempt to prove at trial that other individuals took the images and video and put them on his computer, he presented little evidence to support this theory. The trial testimony supported the conclusion the government made when it first seized the evidence: that the digital media, found in his home and his own pants pocket, was created by and belonged to Fletcher. At worst, the government assumed prematurely that Heather was telling the truth

about what transpired at Fletcher's home and failed to preserve evidence that *may have* supported a different conclusion. Nothing about this assumption suggests the government actually knew beforehand that exculpatory "trace" evidence may have been on the seized items—this conclusion is buttressed by the fact that the record still fails to support the notion that such trace evidence would have exonerated Fletcher. Thus, the district court did not clearly err by denying Fletcher's motion for judgment of acquittal based on the handling of the evidence. *See Kimoto*, 588 F.3d at 490-91.

That leaves Fletcher's claim that the district court erred by refusing to dismiss a particular juror, who served only as an alternate, for cause. After seating the twelve regular jurors, the court called eight others for consideration as alternates. One of these individuals revealed that she worked as an information systems technician for the Galesburg, Illinois Police Department and that two to three years earlier she had taken a five-day computer forensics class from the government's computer expert James Feehan. Fletcher moved to strike the juror based on her "relationship with Feehan." The district court denied Fletcher's request, reasoning that the five-day course did not provide an appropriate basis to strike the juror for cause. Neither party exercised a peremptory challenge. The individual was seated as an alternate, but did not serve on the regular jury, which remained intact throughout trial and deliberations.

Fletcher now maintains that we should presume that the alternate juror was biased against him because she

was a "former student" of Feehan and because she worked for the Galesburg Police Department. Fletcher contends that her affiliation with law enforcement rendered her incapable of fairly considering his defense that officers mishandled the evidence in his case. Notably, he fails to mention that she served only as an alternate until his reply brief, where he cursorily contends that it should make no difference whether she was actually empaneled or not.

Because of the district court's ability to evaluate juror credibility during *voir dire*, we accord great deference to the court's ruling on a challenge for cause. *United States v. Ray*, 238 F.3d 828, 837 (7th Cir. 2001). Moreover, we will overturn a conviction based on the district court's refusal to remove a juror only if the defendant can show prejudice. *See United States v. Vega*, 72 F.3d 507, 512 (7th Cir. 1995). We see no abuse of discretion in the district court's conclusion that the juror's connection to Feehan was too attenuated to support a dismissal for cause. Indeed, we are hard-pressed to understand why we would, as Fletcher urges, presume "implied bias" on this record. We doubt that the juror's enrollment in a five-day course some two to three years prior so connects her to Feehan that we would disbelieve her assurances that she could fairly view the evidence. And her employment for the Galesburg Police Department alone does not, as Fletcher suggests, imply an unacceptable degree of bias. *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000) ("[G]overnment employment alone is not, and should not be, enough to trigger the rule under which an employee is disqualified from serving as a juror in a

case involving her employer."). Finally, even if the connections to law enforcement were troubling, Fletcher cannot demonstrate prejudice from the alternate juror's mere presence at his trial. She did not assist in deliberations or deciding the case, and Fletcher has presented nothing to substantiate his claim that her very presence "tainted" the verdict. *Cf. id.* at 705 (no reversible error when juror who should have been stricken for cause was instead excused through peremptory challenge and thus did not decide case). The district court did not abuse its discretion by seating the juror in question as an alternate.

### III.

For the foregoing reasons, we AFFIRM Fletcher's convictions in all respects.