# United States Court of Appeals
## For the First Circuit

No. 13-2055

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH DUQUETTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Selya, and Thompson,
Circuit Judges.

Lenore Glaser on brief for appellant.
Thomas E. Delahanty II, United States Attorney, and Margaret
D. McGaughey, Assistant United States Attorney (Appellate Chief),
on brief for appellee.

February 13, 2015

**THOMPSON, Circuit Judge.** Appellant Joseph Duquette ("Duquette") challenges the 15-year sentence meted out to him after pleading guilty to being a felon in possession of multiple firearms in violation of 18 U.S.C. § 922(g)(1) and the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We affirm.

## I. BACKGROUND

The events culminating in Duquette's conviction and sentence occurred in January of 2011. Duquette's 14-year-old daughter, along with her brother (it is not clear from the record if he was Duquette's son), stayed at Duquette's home in Maine for a weekend visit. During their visit, Duquette's daughter saw a shotgun on the kitchen table. Duquette then showed her a pistol that he kept in his bedroom, and she noticed two loaded magazines on the dresser, too. Those magazines, Duquette explained, were for his "AK-47."

Duquette warned the two youngsters not to touch any of the guns, as they could "blow a hole in them [that is, the children]." This prohibition did not apply to him, though. After becoming upset at some point that weekend, Duquette threatened to kill his daughter's mother, got his pistol, and left the house. Fortunately, Duquette did not follow through with his threat, and he returned home a short while later. Nevertheless, his daughter was sufficiently worried that she later told her mother about what had happened. Her mother promptly contacted the police, who, after

obtaining a search warrant, recovered a rifle, a shotgun, a pistol, and some ammunition from Duquette's home.  Duquette's possession of these weapons was a problem for him because he had multiple prior felony convictions.

A grand jury charged Duquette with unlawful possession of firearms after having been convicted of multiple crimes classified as felonies under the laws of Maine.  The indictment alleged that his prior felony convictions included unlawful trafficking in scheduled drugs, two convictions for possession of a firearm by a felon, trafficking in prison contraband, escape, assault on an officer, and--of import here--two burglary convictions.  Given his record, the government alleged that Duquette's possession of firearms was in violation of 18 U.S.C. §§ 922(g)(1)[1] and 924(e)[2], charges which carried with them the possibility of a mandatory 15-year minimum sentence.  Duquette ultimately entered a guilty plea.

At Duquette's sentencing hearing, the district judge first determined what the United States Sentencing Guidelines

---

[1] "It shall be unlawful for any person -- (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ."  18 U.S.C. § 922(g)(1).

[2] "In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).

-3-

("Guidelines") had to say about how long his sentence should be. Applying the Guidelines's directives, the judge took into account the nature of Duquette's offense and the fact that it involved firearms, his criminal history, and that he had accepted responsibility for his actions by pleading guilty. Based on these factors, the judge determined that the Guidelines recommended a sentence somewhere between 135 and 168 months.

After settling on the sentencing range recommended by the Guidelines, the district judge still had to contend with the potentially-applicable statutory minimum sentence in the ACCA. To be subject to the ACCA's 15-year minimum sentence, three or more of Duquette's past convictions must have qualified as "violent felonies." See 18 U.S.C. § 924(e)(1). A "violent felony," as that term is used in the ACCA, includes (among others) any crime "punishable by imprisonment for a term exceeding one year . . . that . . . is burglary." 18 U.S.C. § 924(e)(2)(B). The district judge found that Duquette's state-law burglary convictions constituted violent felonies given that he had been sentenced to more than one year in jail as punishment for each crime. The judge concluded that, in light of his other priors, Duquette had at least three convictions for violent felonies. Accordingly, and because the ACCA's minimum 15-year (180-month) sentence exceeded the Guidelines-recommended range of 135 to 168 months, the district

-4-

judge imposed the statutory minimum jail term of 15 years. Duquette's appeal of his sentence followed.

## II. DISCUSSION

Duquette's sole challenge to the length of his sentence can be summed up rather succinctly. Conceding that his prior drug and assault convictions qualify as two out of the three convictions needed to trigger the ACCA's minimum sentence, Duquette refers back to the Guidelines to argue that he may be designated as a "career offender" only if his burglary convictions qualify as crimes of violence, not as defined by the ACCA, but as defined by the Guidelines. See U.S.S.G. § 4B1.1. Duquette, however, never tells us why he thinks the Guidelines's definition of a crime of violence should trump the ACCA's clear language and its own, specific definition of a violent felony.

He simply says that, for his burglaries to count towards career offender status, he must have burglarized someone's dwelling, not simply any old structure. See U.S.S.G. § 4B1.2. The problem, as Duquette sees it, is that there was no evidence in the record showing that either of his past burglaries involved a dwelling. And in the absence of such evidence, he posits that the district court had no basis for concluding that his past burglaries were violent felonies triggering the ACCA's 15-year minimum sentence. See 18 U.S.C. § 924(e)(1). Duquette urges us to vacate

his sentence and remand for the district court to sentence him again, without regard to the ACCA's 15-year minimum.

The government raises several arguments against this, but the only one we need concern ourselves with is its position that the ACCA does not require a defendant's burglary to have involved a dwelling for it to count as a violent felony under the ACCA. The government also offers up a theory to explain Duquette's failure to tell us why his sentence should be controlled by the Guidelines and not the ACCA: "in insisting that only burglary of a dwelling can qualify as an ACCA 'violent felony,' Duquette confuses that term with the [] Guidelines' Career Offender provision, which defines 'crime of violence' in a more limited way to apply only to burglary of a dwelling." As we shall see, the government, not Duquette, has it right.

The question we must resolve here is whether Duquette's past burglary convictions under Maine law qualify as violent felonies as defined by the ACCA, 18 U.S.C. § 924(e)(1). "The determination of whether a prior conviction qualifies as a predicate offense for purposes of the ACCA is a legal question subject to de novo review." United States v. Pakala, 568 F.3d 47, 54 (1st Cir. 2009).[3]

---

[3] Unpreserved objections, of course, are subject to plain error review only. See United States v. Tavares, 705 F.3d 4, 24 (1st Cir. 2014). The government says Duquette has only "arguably preserved" an objection to one of the two burglary convictions being counted as a predicate offense toward armed career criminal

-6-

Resolving the issue raised by Duquette is straightforward. "In <u>Taylor</u> v. <u>United States</u>, 495 U.S. 575 (1990), the Supreme Court addressed what burglaries constitute violent felonies under § 924(e)(2)(B)(ii) of the ACCA." <u>Id.</u> (internal quotation marks and brackets omitted). The <u>Taylor</u> Court "held that a 'generic burglary' constitutes a 'violent felony' for purposes of the ACCA." <u>Id.</u> (quoting <u>Taylor</u>, 495 U.S. at 599). It proceeded to "define[] a 'generic burglary' as 'any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure,

---

status and, therefore, plain error review should apply to any appellate argument not predicated upon that particular offense. To prevail under the plain error standard, Duquette would "bear the burden of showing '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States</u> v. <u>Almonte-Nuñez</u>, 771 F.3d 84, 89 (1st Cir. 2014) (quoting <u>United States</u> v. <u>Duarte</u>, 246 F.3d 56, 60 (1st Cir. 2001)).

The record reveals that at the change of plea hearing, Duquette's lawyer advised the court that Duquette would argue at sentencing that certain of his past convictions should not count towards armed career criminal status. Then at sentencing, Duquette himself informed the judge that one of his convictions "was a Class C burglary of a school." He advised the judge that his other burglary conviction "was a Class C" as well, and was related to an incident in which a friend of his went off on his own one night and returned with a "wood splitter," apparently with the police right on his tail. Based on the record here, and although the question is close, we think Duquette probably preserved the issues he raises on appeal. We need not, however, decide this particular question. Duquette is unable to demonstrate any error--plain or otherwise--so it makes no difference anyway whether we apply de novo or plain error review. Since the government appears to have conceded that de novo review applies to at least one of Duquette's arguments, we'll just consider our entire review to be de novo and move on.

with intent to commit a crime."  Id. (quoting Taylor, 495 U.S. at 599).  Nowhere does Taylor indicate (or even imply) that whether the burgled structure is a dwelling has anything to do with determining whether the guilty individual committed a "generic burglary."

Pursuant to Taylor, our task is to examine the Maine burglary statute under which Duquette was convicted and determine whether it sets forth the "generic burglary" elements of (1) unlawful or unprivileged entry into, or remaining in, (2) a building or structure, with (3) intent to commit a crime.  If we find that the statute contains these elements, Duquette's burglary convictions categorically constitute violent felonies within the meaning of the ACCA, and our work is done.  See Taylor, 495 U.S. at 602 (recognizing that the ACCA generally requires courts to take a "categorical approach" by "look[ing] only to the fact of conviction and the statutory definition of the predicate [i.e., prior] offense" to determine whether a prior offense fits the ACCA's definition of a violent felony); see also United States v. Dancy, 640 F.3d 455, 466 (1st Cir. 2011) ("The inquiry under the ACCA is whether the state's legal definition of the offense of conviction fulfills . . . the ACCA's definition of a violent felony.").

Duquette states, and we accept for purposes of this appeal, that the relevant parts of the Maine burglary statute provide as follows:

-8-

A person is guilty of burglary if:

A. The person enters or surreptitiously remains in a structure knowing that that person is not licenced or privileged to do so, with the intent to commit a crime therein.

Me. Rev. Stat. tit. 17-A, § 401(1). By its clear and unambiguous terms, the statute contains all of the elements of "generic burglary" that the Supreme Court set forth in Taylor. Duquette, in fact, concedes this in his brief. See Appellant's Br. at 8 (quoting Taylor, 495 U.S. at 599 ("The statutory elements match the elements of 'generic burglary' defined as 'unlawful or unprivileged entry to a building or structure with the intent to commit a crime.'")). We find, therefore, that this statutory definition of burglary "substantially corresponds to 'generic' burglary." Taylor, 495 U.S. at 602. This is fatal to Duquette's appeal: because Maine's burglary statute sets forth the definition of "generic burglary," under Taylor, a conviction under that statute qualifies as a "violent felony" under the ACCA. And because Duquette has two burglary convictions and concedes that two of his other convictions qualify as violent felonies as well, Duquette is subject to the ACCA's minimum sentence as one who has previously been convicted of three or more violent felonies.

Not so fast, says Duquette. Relying on United States v. Giggey, 551 F.3d 27 (1st Cir. 2008) (en banc), he argues that the district judge should not have found that his burglary convictions count as violent felonies under the ACCA because there is no

-9-

evidence in the record to show that he burglarized a residence on either occasion.  Duquette's argument is off-base though.

The long and short of it is that <u>Giggey</u> involved the interpretation and application of the Guidelines's definition of a "crime of violence," not the ACCA's definition of a "violent felony."  We held in <u>Giggey</u> that "a prior conviction for burglary not of a dwelling is not per se a 'crime of violence'" under the Guidelines's definition of a career offender.  <u>Id.</u> at 28.  In the course of reaching this conclusion, we did, however, recognize and note that the Guidelines's career offender provisions are concerned with a definition of burglary that is "narrower" than the ACCA's definition of that crime.  <u>Id.</u> at 36.  Although satisfying the Guidelines's narrower definition of burglary requires a burglary to have involved a residence, "the term 'burglary' as used in the ACCA [is] broad enough to include both residential and non-residential offenses."  <u>Id.</u> at 35-36.  Accordingly, and to the extent it applies here at all, Giggey actually hurts Duquette's position.

And even if Duquette could convince us that his burglaries do not qualify as "crimes of violence" or render him a "career offender" pursuant to the Guidelines (an issue on which we express no opinion), this would do him no good anyway.  Because Duquette's sentence is reflective of the ACCA's statutory minimum, and not a sentencing range suggested by the Guidelines, showing that his burglaries were not "crimes of violence" or that he is not

-10-

a "career offender" for Guidelines purposes could not result in him receiving a sentence shorter than the 15 years mandated by the ACCA. See Dorsey v. United States, 132 S.Ct. 2321, 2327 (2012) (recognizing that because a federal sentencing statute "trumps the Guidelines[,] . . . ordinarily no matter what range the Guidelines set forth, a sentencing judge must sentence an offender to at least the minimum prison term set forth in a statutory mandatory minimum").

### III. CONCLUSION

For the reasons set forth above, the district judge did not err when he concluded that Duquette's prior convictions subjected him to the ACCA's 15-year minimum sentence.

**Affirmed**.