THOMPSON; Circuit Judge,
dissenting.
Enearnación-Ruiz (“Encarnación”) admits that he is shown on camera engaging in sexually explicit acts with a minor on at least two separate occasions, one of which involved him being filmed having sex with her. And should he prevail on his appeal, Encarnación, at least initially, sought only to go to trial armed with a mistake of age affirmative defense. Specifically, he wanted to be able to tell the jury that he thought the girl was eighteen when he had sex with her before the camera.
The majority believes this case requires us to decide whether the fairly-newly-minted United States v. Rosemond applies to Enearnación’s “claim that the government has to prove beyond a reasonable doubt that an aider and abettor to a production of child pornography charge knew that the victim was a minor.” But we do not need to reach Rosemond to dispose of Encarna-ción’s appeal. The uncontested facts of this case, combined with our binding precedents, demonstrate that he pleaded guilty not only as an aider and abettor, but also as a principal.
Sometimes, it may do no harm to go beyond the narrowest grounds strictly necessary to decide a particular case. Here, however, the majority declares that Rose-mond puts the burden on the government to prove that an aider and abettor of the production of child pornography, unlike the principal offender and regardless of the nature of the aider and abettor’s involvement in the production, knew that the victim was a minor. The majority’s reasoning results in what, in my view, is a truly odd outcome: by requiring the government to prove Encarnación knew his victim was a minor, it is now more difficult for the government to convict the so-called “actor” who, knowing he was being filmed, actually had sex with the minor, than the man who stood by and held the camera. I am not convinced Rosemond requires this result on these facts.
I respectfully dissent.
I. BACKGROUND
The relevant facts are undisputed. The unobjected-to portions of the presentence report[14] establish the following details.
Sometime during April or May of 2010, th'en-31-year-old schoolteacher Encama-ción had sex with a 14-year-old girl, “KMV,” at the apartment of Rey Vilanova-Delgado (“Vilanova”) in the Villa España Housing Project. Vilanova stood by with a *598 videocamera, recording. On another occasion Encarnación, Vilanova, and at least one other man engaged in sex acts with KMV while a fourth man filmed them. Encarnación knew that KMV lived in an apartment on the first floor of Vilanova’s building, and that KMV lived with her mother, brothers, and sister.
When these activities caught law enforcement’s eye, the police recovered multiple videos depicting KMV engaging in various sex acts. One video showed “KMV engaging in sexual intercourse with Roberto Encarnación and in the presence of Rey Vilanova-Delgado.” Two other videos depicted Encarnación “fondling the minor’s breast, hugging her and kissing her intensely,” all while KMV was “wearing her school uniform.”
Encarnación and Vilanova (along with several other men not relevant to this appeal) found themselves facing a charge of “aiding and abetting each other” in the production of child pornography.
The specific count involving Encarnación (Count III) alleged that he and Vilanova,
[fjrom in or about April 2010 through to in or about May 2010 ... while aiding and abetting each other, did employ, use, persuade, induce, entice, or coerce a female minor, identified by the initials “K.M.V[.]”[,] to engage in sexually explicit conduct, namely the lascivious exhibition of the genital areas and performing sexual acts, for the purpose of producing a visual depiction of such conduct, that is, video images ... [a]ll in violation of Title 18 [U.S.C. §§ ] 2251(a) and 2.
Indictment, Count III (emphases added).
18 U.S.C. § 2251(a) provides, in pertinent part, that “[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct ... shall be punished.” The other statute mentioned in the indictment, the aiding and abetting statute, states simply that “[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.” 18 U.S.C. § 2(a).
After a period of negotiation, Encarna-ción entered into a written plea agreement whereby he agreed to plead guilty to the charges set forth in Count III. See Plea Agreement at 1. The agreement proceeded to set forth the language of Count III verbatim, including its statement that all of the acts charged were in violation of both 18 U.S.C. § 2251(a) and 18 U.S.C. § 2. Id. at 1-2 (“All in violation of Title 18, United States Code, Section 2251(a) and 2.”).
Through the agreement, Encarnación acknowledged the accuracy of the. facts set forth in the appended Government’s Version of Facts. Id. at 9. This stated, in part, that Encarnación,
while aiding and abetting others charged in the Superseding Indictment, did employ, use, persuade, induce, entice or coerce [KMV] ... to engage in sexually explicit conduct, namely the lascivious exhibition of the genital areas and performing sexual acts, for the purpose of producing a visual depiction of such conduct
Id. at 13 (emphases added). Encarnación also conceded that he appeared in a video “aiding and abetting another co-defendant ... engaging in sexually explicit conduct with the minor ‘KMV.’ ” Id. At his change of plea hearing, Encarnación explicitly admitted that he “participated” in sexual activities with KMV, that those activities were recorded, and that “child pornography in a technical sense was produced.” *599 Change of Plea Tr. at 25. Encarnación farther agreed that he and his codefendant “induced” or “enticed” the victim to engage in the sexual activity. Id.
Although Encarnación agreed to waive most of his appeal rights as part of his plea agreement, he specifically reserved the right to seek review of “whether the defendant’s mistake of age of the victim can be raised as a defense to a charge of production of child pornography under [18 U.S.C. § ] 2251(a).” Id. at 10 (emphasis added).[15] This appeal, raising that issue, followed his sentencing.
II. DISCUSSION
It hardly needs saying that “[c]hild pornography harms and debases the most defenseless of our citizens.” United States v. Williams, 553 U.S. 285, 307, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Accordingly, preventing “sexual exploitation and abuse of children constitutes a government objective of surpassing importance.” New York v. Ferber, 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Production of child pornography is especially pernicious because it creates “ ‘a permanent record’ of the depicted child’s abuse.” Paroline v. United States, — U.S. —, 134 S.Ct. 1710, 1717, 188 L.Ed.2d 714 (2014) (quoting Ferber, 458 U.S. at 759, 102 S.Ct. 3348). “In enacting U.S.C. § 2251, ‘Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it.’ ” Ortiz-Graulau v. United States, 756 F.3d 12, 19 (1st Cir.2014) (quoting United States v. Poulin, 631 F.3d 17, 23 (1st Cir.2011)); see also United States v. Fletcher, 634 F.3d 395, 403 (7th Cir.2011) (“Even more than the passive viewer of child pornography, the creator of such material not only contributes to but is directly responsible for the exploitation of the child victim.”).
Congressional intent, along with the important policy considerations embodied in 18 U.S.C. § 2251, must be borne firmly in mind when addressing Encarnación’s arguments. After all, Encarnación admitted that he actively participated in the filming of sexual acts with a minor.
1. The Nature of the Charges
In my opinion, the majority’s analysis first goes astray when it accepts the premise that Encarnación pleaded guilty as an aider and abettor only. This, however, is incorrect.
First, I note that the Supreme Court says “[a] single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged.” Sanabria v. United States, 437 U.S. 54, 66 n. 20, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (citing Fed.R.Crim.P. 7(c)(1)). And as the majority recognizes, we have said that principal and aider and abettor liability are simply two alternative theories of liability with respect to the substantive crime. See United States v. Shea, 150 F.3d 44, 50 (1st Cir.1998), abrogated on other grounds by United States v. Mojica-Baez, 229 F.3d 292 (1st Cir.2000). In fact, when it comes to aiding and abetting, the government does not even necessarily have to set that theory forth in the charging document. See United States v. Sanchez, 917 F.2d 607, 611 (1st Cir.1990) (“Aiding and abetting is an alternative charge in every ... count, whether explicit or implicit. A defendant can be convicted of aiding and abetting the commission of a substantive offense upon a proper demon *600 stration of proof so long as no unfair surprise results.”) (internal citations and quotation marks omitted, omission in original); see also United States v. Vázquez-Castro, 640 F.3d 19, 25 (1st Cir.2011) (reiterating our holding in Sanchez that “ ‘[a]iding and abetting is an alternative charge in every count, whether explicit or implicit.’ ” (alteration in original) (quoting Sanchez, 917 F.2d at 611)).
Thus, although Encarnación was charged in a single count with the substantive offense of production of child pornography, that one count charged him with criminal liability for its production as a principal, an aider and abettor, or both. It is against this backdrop that I consider the language set forth in Count III.
Encarnación and Vilanova were charged with “aiding and abetting each other” to “employ, use, persuade, induce, entice or coerce a female minor ... to engage in sexually explicit conduct ... for the purpose of producing a visual depiction of such conduct, ... [a]ll in violation of [18 U.S.C. §§ ] 2251(a) and 2.” The critical language here is the phrase “aiding and abetting each other,” combined with the allegation that Encarnación himself “did employ, use, persuade, induce, entice, or coerce a female minor ... to engage in sexuálly explicit conduct ... for the purpose of creating a visual depiction of such conduct.” The majority, though, casually dismisses and declines to give effect to our previous cases deciding that this language charges a defendant as both a principal and an aider and abettor.[16] See United States v. Hilario-Hilario, 529 F.3d 65, 69 (1st Cir.2008) (“Hilario”); United States v. Matos-Quinones, 456 F.3d 14, 19-20 (1st Cir.2006); Ramirez-Burgos v. United States, 313 F.3d 23, 31 (1st Cir.2002).
Hilario is directly on point and controls the outcome here.[17] The defendants in Hilario, a case involving alien smuggling, were charged by way of an indictment “alleging that ‘aiding and abetting each other’ the defendants ‘did knowingly, willfully and intentionally bring and attempt to bring to the United States'... approximately [87] aliens.’ ” 529 F.3d at 69 (emphasis added). In discussing the nature of the charges set forth in that indictment, we explained that, “[fjairly read, this formulation, 'although jumbled, charged each defendant with both the central offense of smuggling an alien into the United States or attempting to do so ... and the separately enumerated offense of aiding and abetting such an offense.” [18] Id.
*601 The distinction between liability as a principal and liability as an aider and abettor made a difference in Hilario — “[o]ne who aids and abets is normally liable as a principal, 18 U.S.C. § 2 (2000), but the [alien] smuggling statute prescribes in certain cases a lower sentence for mere aiders and abettors.” Id. That statute specifically provided that a defendant “convicted of smuggling ah alien is subject to a ten-year maximum, but — quite unusually — one convicted solely of aiding or abetting can be imprisoned for no more than five years.” Id. at 75 (internal citations omitted).[19] We commented on the unusual nature of this punishment scheme because it stood in contrast to “[t]he ordinary rule,” which, “in the absence of such a distinction in the substantive statute, is that an aider and abettor is treated as a principal, 18 U.S.C. § 2, and is punishable accordingly.” Id. at 75 n. 2. We then quoted a case out of the Third Circuit for the proposition that an “aider and abettor is a principal and can be punished as such.” Id. (quoting United States v. Bryan, 483 F.2d 88, 95 (3d Cir.1973)).
Because both theories of liability were in play, the' “district court gave instructions to the jury covering both smuggling and aiding and abetting that offense, and asked whether each defendant was guilty or not guilty [a]s to count one of the indictment.’” Id. at 75 (alteration in original). The court, however, “did not ask the jury to determine whether each defendant was guilty of smuggling or merely aiding and abetting.” Id. Although the jury made a special finding with respect to four of the defendants that subjected them to a prison sentence lasting “any term of years or for life,” it did not make that finding with respect to a fifth defendant. Id. Accordingly, that defendant was subject to a ten-year maximum sentence if a principal, but only five years if an aider and abettor. Id.
When considering that defendant’s challenge to his sentence, we determined that the district court erroneously gave him a ten-year sentence because it could not be said “from the jury verdict that [this defendant] was convicted of smuggling (rather than aiding and abetting).” Id. at 76. As a result of the ambiguity, we-ordered the defendant to be re-sentenced, with a maximum term of five years in jail. Id. at 76-77.
Thus, our analysis and ultimate resolution of the issue in Hilario further shows that the indictment charged the defendant as both a principal and as an aider and abettor. Had it charged only one or the other, we would have had no need to attempt to determine the theory of conviction from the jury’s verdict. It would have been enough to simply declare that he was charged as either a principal or an aider and abettor and subject to the applicable statutory maximum. That we were unable to do this demonstrates that the charging language was critical to the outcome. Hilario, having decided the very question before- us, is dispositive and mandates the conclusion that Count III here charged Encarnación with both producing child *602 pornography and with aiding and abetting the production of child pornography.
And, although Hilario is perhaps the case addressing this particular charging language most directly, it did not announce a new rule or depart from the prevailing law of our Circuit. In Matos-Quinones, we addressed an indictment charging that “aiding and abetting each other with the intent to cause death and serious bodily injury, [the defendants] did take a motor vehicle ... from [the victim], by force and violence.” Matos-Quinones, 456 F.3d at 19-20 (internal quotation marks omitted). This language, we said, “indicted both defendants as principals and as aiders and abettors.” Id. at 20 (citing United States v. Bennett, 75 F.3d 40, 47-48 (1st Cir.1996)).
Ramirez-Burgos, another carjacking case, is consistent with this approach as well. The indictment charged the defem dants with “aiding and abetting each other” in the carjacking, “[a]ll in violation of 18 [U.S.C. §§ ] 2119(2) and 2.” Ramirez-Burgos, 313 F.3d at 26. Section 2119(2) is the carjacking statute, while § 2 is, of course, the aiding and abetting statute. “The jury returned a verdict of guilty” on the carjacking count. Id. at 27. Based on the indictment’s language, we pointed out that the appealing defendant had not only been “charged and convicted as a principal, but he was also charged and convicted as an aider and abettor under 18 U.S.C. § 2(a).” Id. at 31.
Here, as in the cases just mentioned, the indictment utilizes its “aiding and abetting” and its “did employ, use, persuade, [etc.]” clauses to describe concurrent acts; aiding and abetting another, and employing, using, persuading, and so on. Indeed, the indictment even places the word, “while” before aiding and abetting, further demonstrating that the actions took place at the same time. And the indictment does not simply say that Encarnación aided and abetted the production of child pornography. Rather, it charges that En-carnación and Vilanova aided and abetted “each other.” This last phrase, “each other,” would not be needed if the government intended to charge Encamación as an aider and abettor only. See, e.g., United States v. Diaz-Castro, 752 F.3d 101, 106, 107 (1st Cir.2014) (noting that a count charging the defendant with “aiding and abetting possession of a firearm in relation to a drug trafficking crime” charged the defendant with “ aiding and abetting’ the firearms crime, not direct possession of the firearm”). The addition of “each other” is, however, specifically required to charge him as a principal.[20]
Applying our well-settled precedent here, there is no doubt that the indictment charged Encarnación with production of child pornography as both a principal and an aider and abettor.
2. Encarnación’s Plea
The remaining question is whether En-carnación actually pleaded guilty (and was therefore convicted) as a principal, an aider and abettor, or both. My research has not uncovered any cases in which we specifically addressed the effect of a guilty plea when a count contains multiple theories of criminal liability on a single sub *603 stantive charge. We have, however, had cause in the past to examine what happens when a defendant pleads guilty to multiple substantive offenses set forth in different counts.
The rule in our circuit is that when a defendant charged with multiple counts enters an unqualified guilty plea, that defendant admits guilt as to all counts. United States v. Grant, 114 F.3d 323, 329 (1st Cir.1997) (quoting United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)) (“When a criminal defendant pleads guilty, he admits not only that he committed the factual predicate underlying his conviction, but also that he committed the crime charged against him. Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate offenses.” (internal quotation marks and citation omitted)). Indeed, “[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.” Broce, 488 U.S. at 570, 109 S.Ct. 757.
Admittedly, Grant and Broce dealt with indictments setting forth multiple counts, while the indictment here sets forth a single count. Nevertheless, since priricipal liability and aider and abettor liability are nothing more than alternative ways to get to a finding of guilt on the substantive crime, see Shea, 150 F.3d at 50, by pleading guilty Encarnación admitted his guilt to the substantive charge set forth in the indictment — production of child pornography — which included theories of both principal and aiding and abetting liability, see Hilario, 529 F.3d at 69. In the absence of some, specific delineation as to which alternative theory was being advanced by the government or pled to by the defense, Encarnacion’s unqualified plea admitted his guilt under either or both. Cf. Bradshaw v. Stumpf, 545 U.S. 175, 184, 187, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (applying Ohio aggravated murder statute and Ohio aiding and abetting law to conclude that the appellant, who had pleaded guilty to aggravated murder, was guilty on an aiding and abetting theory even if new evidence tended to show that his confederate actually pulled the trigger because “the precise identity of the triggerman was immaterial to Stumpf s conviction for aggravated murder”).
My view, in addition to being consistent with the indictment’s language and the logic espoused in Grant, Broce, and Stumpf, is in accordance with the record surrounding Encarnacion’s plea. Looking first at the Plea Agreement itself, and contrary to the majority’s, view, nothing there establishes that Encarnación pled to the aiding and abetting theory only.
As previously noted, the Plea Agreement states that Encarnación agreed to plead guilty to Count III. Plea Agreement at 1. The Agreement sets forth the complete text of that count, which charges Encarnación as both a principal and an aider and abettor, verbatim. Id. at 1-2. The Government’s Version of Facts, which Encarnación agreed is accurate, also followed the language of the indictment, stating that Encarnación, “while aiding and abetting others charged in the Superseding Indictment, did employ, use, persuade, induce, entice or coerce a female minor ... to engage in sexually explicit conduct ... for the. purpose of producing a visual depiction of such conduct ... [a]ll in violation of’ 18 U.S.C. §§ 2251(a) and 2. Id. at 13 (emphases added). The use of language mirroring that of the indictment, combined with the explicit reference to both the production of child pornography *604 statute and the aiding and abetting statute, demonstrates that Encarnación admitted he acted as both a principal and an' aider and abettor when he pleaded guilty.
Furthermore, the record of Encarnación’s change of plea hearing, which we may look at to determine the nature of the charges he pled to, see Hilario, 529 F.3d at 75-76 (examining the record to determine exactly that), shows that Encarnación admitted guilt to both theories. The district judge — after assuring himself of En-carnación’s competency and going over the rights Encarnación would be giving up by pleading guilty — explained the charges as follows:
The Court: In Count III, which is your situation, Mr. Encarnación, the one you are pleading guilty to, you are charged with production of child pornography here. The charge is from April to May, 2010, in Puerto Rico, you along with another individual, aiding and abetting each other, also employed, used, persuaded, enticed a female minor, I’m not using the word coerce because that is not the issue here in this case. There is no coercion in this case. To engage in sexually explicit conduct. Namely, the lascivious exhibition of their genital areas and performing sexual acts for the purpose of producing visual depictions of such conduct using video camcorders, Sony video camcorders manufactured in China, and some hard drives also manufactured in Thailand, equipment also transported in interstate or foreign commerce.
That is the charge in your case, Mr. Encarnación. Do you understand that?
Defendant Encarnación: I understand.
Change of Plea Tr. at 10-11 (emphases added). The district judge also told En-carnación the following:
The Court: The Government has to prove what happened. What happened was that you enticed or convinced these minors[21] to pose and to engage in sexually explicit conduct by, you know, showing their genital area, engaging in sexual conduct basically, to be videoed and kept in these recordings, them being minors.
Do you understand that?
Defendant Encarnación: Yes.
Id. at 12-13 (emphasis added). The judge further explained, and Encarnación indicated he understood, that
the law doesn’t require that you look at the Birth Certificate of these women, young women to determine the age or that they looked to be 21 or something of the sort. That’s not really important. As long as they were minors, you are involved in a situation that is criminally prohibited.
Id. at 13. Encarnación responded in the affirmative when the judge asked him whether he understood that he would be “pleading to Count III, which is also production of child pornography.” Id. at 14. And when the district judge asked Encar-nación whether he wanted the judge to “go into the details, the crude details of the sexual acts that were performed,” Encar-nación declined. Id. at 14-15.
After going through the potential penalties attendant to a guilty plea, the district judge asked Encarnación whether he had “[a]ny doubt ... as to the kind of crime you’re pleading guilty to,” and Encarna-ción responded, “No, there’s no doubt.” Id. at 19. The district judge also put on *605 the record that, “there’s also an issue that you are reserving appealing, whether in the First Circuit the mistake of age defense is a defense” to the charged crime.[22] Id. at 22.
Before accepting the guilty plea, the judge summed it all up:
The Court: But the bottom line is you indeed participated in acts of a sexual nature with minors, and they were recorded with equipment of the kind we mentioned here. In other words, child pornography in a technical sense was produced_ That’s what you did. Is that so, both of you?
[Codefendant]: Yes.
Encarnación: Yes.
Id. at 25 (emphasis added). Encarnación confirmed that he either “induced” or “enticed” KMV to participate in the recorded sexual activity, and that KMV- “so happened to be less than 16.” Id. at 25-26. The judge then accepted Encarnación’s guilty plea. Id. at 26.
The transcript leaves no doubt that the district judge told Encarnación, more than once, that he was pleading guilty to participating in the production of child pornography by engaging in sexual activity with a minor. Notably, neither Encarnación nor the district judge indicated that he was pleading guilty as an aider and abettor only. In fact, there was no discussion whatsoever as to which legal theory the government was proceeding on. The only time the phrase “aiding and abetting” was mentioned in the context of the charges against Encarnación was when the district judge paraphrased the indictment’s Count III. And even then, the judge stated that Encarnación and Vilanova were alleged to have, “aiding and abetting each other, ... employed, used, persuaded, [or] enticed a female minor” to engage in sexually explicit conduct for the purpose of recording that conduct.
This formulation tracked the language of the indictment charging him as both a principal and an aider and abettor in the production of child pornography and was sufficient to put Encarnación on notice that, in accordance with our precedent, he was pleading guilty both as a principal (by participating in the sexual conduct), and an aider and abettor (by performing the acts knowing that Vilanova was filming). See Hilario, 529 F.3d at 69.
The majority is concerned that the parties have not' specifically argued that En-camación was charged and convicted as a. principal in addition to an aider and abettor. Although the government’s briefing could have been more explicit, the majority’s concern is not well-founded.
In its main brief, the government quoted 18 U.S.C. § 2 in full and, citing United States v. Southard, 700 F.2d 1 (1st Cir.1983), pointed out that the statute “imposes liability on a principal or those who aid and abet the commission of a crime.” Gov’t Br. at 23. This is practically a verbatim quote from Southard. 700 F.2d at 19 (“[18 U.S.C.] [s]ection 2 does not define a crime; it imposes liability on a principal or those who aid and abet the commission of a crime.”). The government then argued that Encarnación “actively assisted and participated in the substantive of *606 fense” of producing child pornography, that the recording could not have been accomplished “[wjithout his active participation,” and that, because he “engagfed] in sexually explicit conduct with a minor he became associated with the principal’s criminal endeavor and took part in it, intending to assure its success.” Gov’t Br. at 23. From all this, the government concluded that Encarnación “must be punished as a principal.” Id.[23]
Further, although Encarnación focuses here only on the aiding and abetting portions of 18 U.S.C. § 2, the government’s brief spelled out the statute — which is not limited to aiders and abettors — in full. It explicitly provides that “[w]hoever commits an offense against the United States ... is punishable as a principal.” 18 U.S.C. § 2(a). The concept that Encarna-ción is punishable as a principal because he actively participated in the crime — in other words, because he joined in and ended up committing the crime, too — was squarely presented in the government’s brief.
Even more importantly, applying the uncontested facts of this ease to our binding precedent leaves no doubt that Encar-nación in fact admitted guilt as both a principal and an aider and abettor. “We are, of course, free to affirm a district court’s decision on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below.” Doe v. Anrig, 728 F.2d 30, 32 (1st Cir.1984). We should do so here because, as I will explain, Encarnación’s arguments that a mistake of age defense is required fail, at least with respect to an individual charged with violating 18 U.S.C. § 2251(a) as a principal.
3. Availability of a Mistake of Age Defense to a Principal Charged with Violating 18 U.S.C. § 2251(a)
Having concluded that Encarnación was convicted as a principal, I now turn to the actual issue he reserved for appeal: “whether the defendant’s mistake of age of the victim can be raised as a defense to a charge of production of child pornography under [18 U.S.C. § ] 2251(a).” Plea Agreement at 10. Encarnación, of course, presents his appellate arguments from the perspective of an accused aider and abettor, not a principal. In light of my conclusion that the government did make the argument that Encarnación is guilty as a principal since he participated in the crime, I could take Encarnación’s concession in his brief that a principal is not entitled to a mistake of age defense and end my analysis there.
Nevertheless, because I must ultimately address the majority’s holding that the government has the burden of proving that an aider and abettor is aware of the victim’s minority in an 18 U.S.C. § 2251(a) prosecution, it is logical to explore first whether — and why or why not — a mistake of age defense is available to one charged as a principal. Furthermore, the cases Encarnación cites in his briefs (other than Rosemond) deal with individuals charged as principals, and he seeks to apply their reasoning to aiding and abetting cases. *607 Accordingly, I embark on this - analysis first before turning my attention to the majority’s view.[24]
i. Congressional Intent
Looking first to 18 U.S.C. § 2251(a)’s plain language, it is clear that Congress did not intend for any such defense. Had Congress intended a mistake of age defense, it would have used language requiring knowledge of the victim’s age on the part of the defendant, as it did in a subsequent section criminalizing the distribution and/or receipt of child pornography. Compare 18 U.S.C. § 2251(a) with 18 U.S.C. § 2252(a) (requiring a showing that a defendant “knowingly” distributed child pornography). Congress also could have explicitly included mistake of age as an affirmative defense, as it did for a charge of sexual abuse of a minor or ward under 18 U.S.C. § 2243(c), but chose not to do so. See also 18 U.S.C. § 2252(c) (setting forth an affirmative defense for possession of child pornography). These are strong textual indications that mistake of age is not a defense to an 18 U.S.C. § 2251(a) prosecution.
The clincher though is that “in 1977 when Congress amended [18 U.S.C. §§ 2251(a) and 2252] ‘the new. bill retained the adverb ‘knowingly in § 2252 while simultaneously deleting the word ‘knowingly’ from § 2251(a).’” United States v. Fletcher, 634 F.3d 395, 400 (7th Cir.2011) (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 76, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)); see also United States v. Gendron, 18 F.3d 955, 960 (1st Cir.1994) (recognizing parenthetically that Congress “dropp[ed] the word ‘knowingly’ from the production section of the statute [i.e., 18 U.S.C. § 2251(a)], but not from the distribution section [i.e., 18 U.S.C. § 2252]”). “This deletion was intended to reflect Congress’s ‘intent that it is not a necessary element of a prosecution [under § 2251(a) ] that the defendant knew the actual age of the child.’ ” Fletcher, 634 F.3d at 400 (alteration in original and internal quotation marks omitted) (quoting X-Citement Video, 513 U.S. at 76, 115 S.Ct. 464). Furthermore, the Supreme Court has noted (albeit in a different context) that “many sex crimes involving minors do not ordinarily require that a perpetrator know that his victim is a minor.” Flores-Figueroa v. United States, 556 U.S. 646, 653, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009).
Thanks to the clear statutory language and legislative history, there is simply no question that a defendant’s mistake of age of the victim is not a defense to a production of child pornography charge. By not requiring knowledge of the victim’s age, Congress intended production of child pornography to be a strict liability crime in that regard, akin to statutory rape. See United States v. Velazquez, 777 F.3d 91, 95 (1st Cir.2015) (recognizing that the category of “strict, liability sex crimes against minors” includes statutory rape); X-Citement Video, 513 U.S. at 64, 74-76 and 76 n. 5, 115 S.Ct. 464 (discussing Congress’s intent to exclude a scienter requirement and noting that “producers [of child pornography] may be convicted under § 2251(a) without proof they had knowledge of age”).
ii. Constitutional Arguments
Having concluded that Congress did not intend to provide a mistake of age defense, the next question is whether such a defense might be constitutionally required. *608 Although the parties have not briefed any constitutional issue from the perspective of a defendant charged as a principal, they have addressed an aider and abettor’s liability. Encarnación rests his constitutional arguments entirely on the First Amendment and the Commerce Clause, eschewing any sort of due process claim. Accordingly, I confine my inquiry to those issues only.
a) First Amendment
Encarnación argues that the First Amendment requires a mistake of age defense because, in its absence, 18 U.S.C. § 2251(a) would “chill” constitutionally protected speech. The concern expressed in his brief is that an employee of a legitimate producer of commercial pornography who is only ancillarily involved with the filming (e.g., a lighting or set designer) could be facing a 15-year jail term if the producer failed to verify that all of the performers were adults. The Ninth Circuit, in a case relied on by Encarnación, addressed such a situation in United States v. U.S. Dist. Ct. for Cent. Dist. of Cal., Los Angeles, Cal., 858 F.2d 534 (9th Cir.1988) (reading a reasonable mistake of age defense into an 18 U.S.C. § 2251(a) prosecution against producers of commercial pornography where a minor engaged in a sophisticated, long-lived, and successful charade to pass herself off as an adult to the commercial pornography industry).
First, I note that neither Encarnación’s hypothetical nor U.S. Dist. Ct. have anything to do with the facts of this ease. In no way was Encarnación involved in the production of legitimate, commercial pornography. Thus, he has not presented anything that would allow me to conclude that holding a producer strictly liable for the age of the victim is unconstitutional as applied to him.
Moreover, Encarnación fails to come forward with anything more than speculation in support of his First Amendment argument that failing to provide a mistake of age defense will “chill” constitutionally protected speech. See Fletcher, 634 F.3d at 402 (“[T]he relevant question for us is whether § 2251 as written risks chilling such a substantial amount of protected conduct that the absence of a mistake-of-age defense outweighs the government’s indisputably compelling interest in protecting children from the documented ills of child pornography.”). Given the complete lack of evidence that enforcing the statute as written (i.e., without a mistake of age defense) will chill (or has already chilled) any protected speech, I would be “hard-pressed to conclude that the plainly legitimate sweep of the statute is outweighed by the possibility that the production of some protected pornography may be chilled.” Id. at 404. I also note that every other circuit to have considered U.S. Dist. Ct. has rejected its holding and declined to find that the First Amendment requires a reasonable mistake of age defense to a charge of producing child pornography. See id. at 404-05 (cataloguing cases).
Our circuit has yet to weigh in on this question. Encarnación’s briefing, however, is not helpful because he has done nothing more than parrot back the Ninth Circuit’s reasoning in U.S. Dist. Ct., with no discussion whatsoever as to why any of the six other circuits that have rejected his First Amendment argument got it wrong. I would, therefore, simply find that Encarnación has failed to show that the statute is unconstitutionally overbroad without a mistake of age defense being made available to those charged with violating 18 U.S.C. § 2251(a) as principals, at least based upon Encarnación’s particular First Amendment challenge.
*609 b) Commerce Clause
Encarnación also says that a mistake of age defense is required by the Commerce Clause. His argument on this is simple: “[t]he production [of child pornography] statute was enacted to counteract the evils of interstate trade in child pornography. But what if the subjects in the video look like adults?” Appellant’s Br. at 21. This argument is insubstantial and merits no great comment.
Encarnación cites no case invalidating § 2251(a) on Commerce Clause grounds. Indeed, he acknowledges that we have already upheld the statute against just such a challenge. United States v. Morales-de Jesus, 372 F.3d 6, 16 (1st Cir.2004) (“Congress, in an attempt to halt interstate trafficking, can prohibit local production [of child pornography] that feeds the national market and stimulates the demand, as this production substantially affects interstate commerce.”) (internal quotation marks omitted).
Undaunted, Encamación presses on, saying that we left the door open to an as-applied Commerce Clause challenge. See id. at 18. But this does not win the day for him either, as we rejected the as-applied challenge on the facts of Morales-de Jesus. Id. at' 21. The defendant in that case “sexually exploited a thirteen-year-old girl, coercing her into performing sex acts with him on multiple occasions, for the purpose of videotaping their eneoun-ters.” Id. We found that it was not even a close case, as the conduct appeared to be “well within the bounds of what Congress intended — and had the authority — to proscribe under its Commerce Clause power.” Id.
The fact that Encarnación had sex with a fourteen-year-old instead of a thirteen-year-old does nothing to distinguish this case from Morales-de Jesus. His as-applied challenge, therefore, fails.
4. Summing Up
By concluding that Encarnación pleaded guilty as a principal and that a mistake of age defense is not available to an individual charged with producing child pornography as a principal, it becomes unnecessary to address the parties’ arguments on whether the defense is available to an aider and abettor. Even if Encarnación could demonstrate that the district judge erred because an aider and abettor like himself is entitled to such a defense, any error was undoubtedly harmless: his conviction as a principal would still stand and the district judge ultimately imposed the minimum jail term allowed by statute. Thus, prevailing on his arguments could not possibly result in him receiving a shorter sentence.
I would, therefore, affirm Encarnación’s conviction and sentence on the basis of his having pleaded guilty as a principal, not just an aider and abettor.[25]
*610 5. Rosemond Does Not Require Adoption of the Majority’s Rule
The majority, based on its reading of Rosemond, concludes that the government must prove beyond a reasonable doubt that an aider and abettor to a § 2251(a) offense knew the victim was a minor. Even if I were to reach the aiding and abetting arguments, I cannot agree that Rosemond requires us to adopt this bright-line rule on the facts before us.[26]
As the government points out in its brief, Rosemond involved something very different from the strict liability crime of producing child pornography, and so may not apply at all here. Rosemond addressed the “double-barreled” crime of using (or carrying) a gun during the commission of a violent or drug trafficking offense in violation of 18 U.S.C. § 924(c). 134 S.Ct. at 1245. The Court determined that a defendant is liable for aiding and abetting a § 924(c) offense where he “has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope — that the plan calls not just for a drug sale, but for an armed one.” Id. at 1249.
What’s more, the majority, in my opinion, overlooks what could be a critical distinction between Rosemond and the cáse here: Rosemond did not involve strict liability sex crimes, or even strict criminal liability on the part of the principal at all. Indeed, the takeaway from Rosemond is that an aider and abettor must have the same amount of knowledge as does the principal about the scope of the contemplated crime, and thereby “becomes responsible, in the typical way of aiders and abettors, for the conduct of others,” that is, the principal offender(s). Id. The principal in a § 924(c) prosecution must have both intended to (1) engage in a drug transaction and (2) do so while armed. Logically then, and as the Supreme Court concluded, an accomplice must know that an armed drug sale was going to happen in *611 order to be guilty of aiding and abetting a § 924(c) offense.
The offense in Rosemond stands in stark contrast to the production of child pornography, where a principal is guilty so long as he has filmed a minor engaging in sexually explicit conduct, even if the principal intended to film an adult. Thus, under Rosemond’s principles, when it comes to the strict liability sex crime of producing child pornography,' the aider and abettor only needs to know that he is assisting or facilitating the filming of sexually explicit activity to have a “full awareness of [the] scope” of the crime. Id. at 1249. Nothing in Rosemond requires (or even points the way towards) a finding that an aider and abettor who is present and participates in the crime must have additional knowledge, unknown to the principal, about the facts and simply does not require us to adopt the majority’s rule.[27]
*612 I also note that neither the parties nor the majority have cited any federal case discussing the degree of knowledge necessary to hold someone criminally hable as an aider and abettor of the production of child pornography. My own research has not turned up any, either. And there are only a couple of state court decisions dealing with this situation. The different outcomes reached by the state courts illustrate why I hesitate to use this poorly briefed case as a vehicle for adopting a blanket rule applicable to all strict liability sex crimes.[28]
First, in a case relied upon by the majority, a North Carolina appellate court has found that to be guilty of aiding and abetting the strict liability crime of statutory rape, the accomplice must have “acted with knowledge that the [victim was] under the age of sixteen.” State v. Bowman, 188 N.C.App. 635, 656 S.E.2d 638, 651 (2008).[29] Bowman involved a situation in which the alleged aider and abettor did not actually participate in sexual activity with any of the minor victims, and arguably was not “present” at the time and place of the crime. See id. at 637.
By contrast, the Massachusetts Appeals Court concluded (after discussing Bowman) that knowledge of age is not necessary to convict a joint venturer of statutory rape where the facts showed that the accused, while he did not participate in any sexually explicit conduct with the victim, was nevertheless “ ‘present’ during commission of the crime and had as much opportunity as the principal to make judgments about [the victim’s] age.” Commonwealth v. Harris, 74 Mass.App.Ct. 105, 904 N.E.2d 478, 486-87 (2009). The defendant in Harris also took affirmative actions to assist the crime, as he drove the vehicle in which the victim and principals rode, picked up the alcohol that the principals used to get the victim drunk, drove to two different motels to procure a room, and was in the motel room when the principals took turns having sex with her, “sometimes watching television and sometimes watching what the others were doing to her.” Id. at 480-81.
Bowman and Harris give me pause in definitively answering Encarnación’s question of whether, and under what circumstances, an aider and abettor of the pro *613 duction of child pornography is entitled to a mistake of age defense. Like so much else in the law relevant to defenses, I believe the answer is rooted in the specific evidence adduced in each particular case. See, e.g., Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (“As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.”); United States v. Lopez-Lopez, 282 F.3d 1, 18 (1st Cir.2002) (“The defendant is not entitled to an instruction on a defense when the evidence in the record does not support that defense.”). It seems likely to me that both policy and due process concerns (which have not been raised here) may require us to make the defense available to certain aiders and abettors who were not present and did not participate in the actual sex acts. Perhaps the theoretical set decorator, for whom the majority expresses much concern, operating at such a distance from the filming so as to be unable to personally explore the age of the minor, would be one such defendant. But that is not this case.
To the extent we consider him an aider and abettor, Encarnación placed himself in a position indistinguishable from that of the principal when he participated in the production of child pornography by having sex: with the minor victim before the camera. His opportunity to gauge for himself the victim’s age was just as good as (or even better than) the one afforded to the man holding the camera. The policy reasons (which flow from due process concerns) that favor presentment of a mistake of age defense by a clueless, non-present, non-participant aider and abettor vanish when it comes to Encarnación. And, in my view, nothing in Rosemond requires us to fashion a rule allowing Encarnación to present a mistake of age defense given the admitted facts in the record.[30]
In sum, because Encarnación was a present, participating aider and abettor in the strict liability crime of production of child pornography, I cannot agree with the majority’s conclusion that Rosemond requires the government to prove that Encarnación — or other similarly situated aiders and abettors — was aware that his victim was a minor. I would leave for another day, in a case where the Rosemond issue is squarely raised and has been fully fleshed out in the parties’ briefs,[31] the question of whether an individual charged only as an aider and abettor to the production of child pornography in violation of 18 U.S.C. § 2251(a) may be entitled to a mistake of age defense and, if so, whether the government or the defendant bears the burden of proof on that defense.
*614 III. CONCLUSION
For the foregoing reasons, I would affirm Enearnación’s conviction and dismiss his appeal.

. It is appropriate to set forth relevant facts laid out in the presentence report as this appeal follows a guilty plea, at sentencing Encarnación's counsel admitted that he was "not challenging” the statements of fact in the presentence report and "has accepted responsibility” for his actions, Sentencing Tr. at 34, and because "it is settled beyond hope of contradiction that unobjected-to '[f]acts contained in a presentence report ordinarily are considered reliable evidence for sentencing purposes,’ ” United States v. Fernandez-Cabrera, 625 F.3d 48, 54 (1st Cir.2010) (bracketed text in original) (quoting United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir.1993)); see also United States v. Velazquez, 777 F.3d 91, 93 (1st Cir.2015) ("Since the appellant’s sentence followed a guilty plea, we glean the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portion of the presentence investigation report ..., and the transcript of the disposition hearing.”).

. Notably, Encarnación’s Plea Agreement did not explicitly reserve the right to argue on appeal that one charged with violating 18 U.S.C. § 2251(a) as an aider and abettor is entitled to raise a reasonable mistake of age defense.

. Indeed, the majority claims that we "have not definitively determined" what "aiding and abetting each other” means in an indictment. Majority Op. at 592. The problem with this position, however, is that (and as we shall see) the issue has in fact been resolved for us by prior panels. All we need to do is apply the precedent to the facts at hand. And I do nothing more than this.

. The majority relies on three of our cases to support its view that sometimes we have treated similar language in the indictment "as indicting the defendant only as an aider and abettor.” Majority Op. at 592. None of these cases, however, gives any indication that any of the issues on appeal turned on whether or not a particular defendant had been charged and/or convicted as a principal or an aider and abettor. Having reviewed the cases, it would be more accurate to say that in each one we assumed,, without deciding, that the defendant was charged and convicted on an aiding and abetting theory only.
Moreover, those cases did not set forth the full text of the charge, so we cannot even compare the language. And nothing in them is in direct conflict with Hilario or calls its holding into question.

.Each clause — "aiding and abetting each other” and "did ... bring” — describes contemporaneous actions. Hilario’s holding recognizes and gives effect to the plain meaning and grammatical construction of the indictment’s language.

. The majority distinguishes Hilario on the grounds that the case dealt with the alien smuggling statute, 8 U.S.C. § 1324, not the aiding and abetting statute, 18 U.S.C. § 2. The alien smuggling statute defines in different sections ‘‘the central offense of smuggling an alien into the United States or attempting to do so, 8 U.S.C. § 1324(a)(1)(A)(i) (2000), and the separately enumerated offense of aiding and abetting such an offense, id. § 1324(a)(1)(A)(v)(II).“ Hilario, 529 F.3d at 69. Because we are only talking about the effect of certain charging language — "aiding and abetting each other” — present both here and in Hilario, I see the majority as enshrining an analytical distinction without a difference.

. This is because the inclusion of the “each other’’ language charges Vilanova with aiding and abetting Encamación in Encamación’s production of child pornography. Because the majority says that it doesn't need to decide what the language in the indictment means, we never get to hear its view on the effect of this language. The majority never reaches this question since, in its view, the parties do not question that Encarnación was charged as an aider and abettor only. Respectfully, the record does not support this assertion.

. Although not relevant to Encarnación’s appeal, the codefendant appearing with him at the change of plea hearing was charged in Count I and was alleged to have victimized more than one minor in his production of child pornography.

. Encarnación did not take this opportunity to alert the district court to his position (expressed for the Erst time in this appeal) that he had been charged as an aider and abettor only, such that the reserved question was really whether one charged as an aider and abettor of the production of child pornography is entitled to a mistake of age defense. And, as noted earlier, the Plea Agreement only reserved the question of whether the defense is available to one charged generally under 18 U.S.C. § 2251(a), not one charged only as an aider and abettor. , Plea Agreement at 10.

. The government clarified its arguments in its supplemental brief, noting that its opening brief had "provided ... a response to the issue which was actually preserved by [Encarnación],” Gov't Supp. Br. at 5, which is "whether the defendant’s mistake of age of the victim can be raised as a defense to a charge of production of child pornography under” 18 U.S.C. § 2251(a), Plea Agreement at 10. The government went on to distinguish between the issue Encarnación reserved for appeal, and his actual "concrete argument on appeal” about aiders and abettors. Gov’t Supp. Br. at 6. Moreover, the government has never conceded that Encarnación was charged or pleaded as an aider and abettor only.

. Doing so also happens to address the actual issue presented before the district court and reserved for appeal.

. The majority is apparently uncomfortable with affirming on this basis because it feels that the government has not briefed the issue. I find the majority's discomfort puzzling.
After all, the majority's conclusion that the government is required to prove knowledge of age as an element of the crime comes in spite of the fact that Encamación expressly disclaimed, and therefore waived, this theory in his opening brief. Appellant’s Br. at 20 ("[Encamación] is asking for ... a mistake of age defense, not that knowledge of age be an element that the government must prove...."). And when we instructed him to specifically brief the question of whether Rosemond requires the government to prove an aider and abettor's knowledge of age as an element of the crime, he gave us nothing more than conclusory statements to the effect of, "yes, it does,” without explaining how or why he believes this is so. Nowhere in his four-sentence treatment of Rosemond does he, similar to what the majority does, address the obviously different mens rea requirements between the drug offense in Rosemond and the strict liability sex crime here. As this is far *610 from the type of developed argument we normally require, Encarnación's cursory treatment of Rosemond further opens him to a finding of appellate waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (“[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”).
But, since it appears that we will be overlooking inadequate (or at least questionable) briefing of a significant issue no matter how we resolve this case, I think we should do so in a way that allows us to decide this appeal on the narrowest grounds possible, and consistent with our well-established precedent, by concluding that Encarnación pleaded guilty as a principal. See Bellville v. Town of Northboro, 375 F.3d 25, 30 (1st Cir.2004). Moreover, and as I will explain, Encarnación’s argument based on Rosemond, even if not waived, is unavailing.

. A quick note on the standard of review. Encarnación did not preserve the issue that he now argues on appeal, thereby opening himself up to the strictures of plain error review. But, for whatever reason, the government did not argue that we should apply plain error review, and in light of this the majority applies de novo review instead. In the process of explaining why, it cites United States v. Tapia-Escalera, 356 F.3d 181, 183 (1st Cir.2004). In that case, we declined to apply plain error review because the standard of review made no difference to the outcome (and because the plain error review would have itself been complicated given the issues at play). Id. Ditto with respect to United States v. Duquette, 778 F.3d 314 (1st Cir.2015), where we said that some claims on appeal would get plain error review, while others we would review de novo. Id. at 317 n. 3. Nevertheless, we noted that the same outcome would obtain regardless of which standard of review we employed because the appellant failed to show that an error occurred in the first place. Id. Accordingly, and as a matter of convenience, we "just consider[ed] our entire review to be de novo and move[d] on.” Id. Here, nothing turns on whether I apply de novó or plain error review. Like we did in Tapia-Escalera and Duquette, I review the issue de novo.

. In addition, citing 2 LaFave § 13.2(f), the majority says that even if a principal does not need to have knowledge of the victim’s minority to be guilty of violating § 2251(a), “the government’s argument that an aider and abettor must also be held liable without fault has been rejected by longstanding law.” Majority Op. at 589. In his treatise, LaFave states that, when it comes to strict liability crimes, "[i]t has been argued that in such a case the accomplice may be held on a liability-without-fault basis if the crime committed by the principal is of the strict liability variety, but this argument has been rejected.” 2 LaFave § 13.2(f). LaFave cites two cases in support of this proposition, neither of which is binding upon us.
One, State v. Bowman, 188 N.C.App. 635, 656 S.E.2d 638 (2008), is from North Carolina’s intermediate court of appeal. And, as I explain later, Bowman is readily distinguishable.
The second case is more than a half-century old and comes to us from an English court. Johnson v. Youden, [1950] 1 K.B. 544. Johnson, never before cited by any state or federal court, does not even appear to deal with a charge of hiding and abetting a strict liability crime. The principal defendant in Johnson, a homebuilder, violated a regulation capping the price at which a house could be sold by collecting a separate charge, paid to him in advance. Id. at 544. He then hid that fact from the attorneys he hired to effectuate the real estate sale. Id.
One of the three attorneys accused of aiding and abetting discovered the excess charge (of which the other two remained wholly ignorant), and was told by the homebuilder that the money had been put into a separate account "to be spent on payment for work, as and when [the homebuilder] would be able lawfully to execute it in the future, on the house on the purchaser’s behalf.” Id. at 544-45, 547. That particular attorney assisted in the sale despite his knowledge of the excess charge because he concluded the charge was legal. Id. at 548. The English court concluded that this attorney was guilty of aiding and abetting the homebuilder’s regulatory violation since his mistaken analysis was no defense. But the other two attorneys, who did not know the charge had been collected in the first place, could not be held liable. Id. at 546-47. Several thoughts come to mind.
First, because the homebuilder was obviously aware of the fact that he had collected this separate charge, Johnson simply did not involve a strict liability crime like the one we must deal with, so I do not find its reasoning particularly persuasive. Second, and to the extent that Johnson could be said to have any bearing on this case, its logic is consistent with mine. By having sex with KMV knowing that he was being filmed, Encarnación became like the attorney who gained knowledge of the excess charge but concluded (erroneously) that he could effectuate the transaction without running afoul of the law. Had Encarnación advanced a different defense, for example, that he did not know he was being filmed, then he might be in a position similar to the two attorneys who were unaware the charge had been collected in the first instance. But Encarnación has never contended he was unaware the camera was rolling, so Johnson can provide him no shelter in any event.
Furthermore, even though LaFave says that criminal liability can not be imposed on a no-fault basis even when it comes to strict liability crimes, he made sure to point out that "[t]his is to be distinguished from the situation where the crime is not totally of a strict liability type, but no awareness is required as to some attendant circumstance to convict *612 either the principal or the accomplice.” 2 LaFave § 13.2(f). Production of child pornography fits this mold, as the guilty principal need know only that he is producing a visual depiction of sexually explicit conduct, with the victim's age acting as the attendant circumstance. Thus, even LaFave leaves open the possibility that an aider and abettor to the production of child pornography in violation of § 2251(a) could properly be convicted without proof that he.knew the victim was a minor. LaFave’s treatise, therefore, even if considered as persuasive authority, does not call for the majority’s sweeping rule.

. By discussing these state cases, I do not intimate that I believe they are binding or that we should defer to the legal reasoning of these courts. I address them because they reflect the complexities other courts have grappled with when confronted by the question facing us today.

. Along the way, Bowman cites an old case out of California, People v. Wood, 56 Cal.App. 431, 205 P. 698 (1922), for the proposition that statutory rape is a strict liability crime, but aiding and 'abetting a statutory rape is not.. See Bowman, 656 S.E.2d at 650. The citation is curious, as Wood simply did not discuss whether and under what circumstances statutory rape could constitute a strict liability crime. Further, the Wood court explicitly noted that the defendant “knowingly both aided and abetted” another’s commission of a statutory rape, as he procured a room for the principal even though the defendant "knew the illegal purpose for which the room was to be used.” Wood, 56 Cal.App. at 432, 205 P. at 698 (emphasis added). Strict liability for an aider and abettor was just not an issue in that case.

. One of Rosemond’s chief concerns is the idea that an accomplice without "advance knowledge” of the nature of the crime lacks any opportunity to "alter [the] plan or ... withdraw from the enterprise.” Rosemond v. United States, — U.S. —, 134 S.Ct. 1240, 1249, 188 L.Ed.2d 248 (2014). And without a "realistic opportunity to quit the crime” after having gained knowledge of its full scope, a defendant does not have "the requisite intent to assist” that particular crime. Id. Although Rosemond does not establish a bright-line rule telling us exactly ,when an individual defendant has had that "realistic opportunity to quit the crime,” it is beyond dispute that Encarnación did: the uncontested evidence in the record shows that not only did he come face-to-face with his victim, but also that Encarnación engaged in sexually explicit conduct with her before a camera on more than one occasion. Rosemond’s underlying concern is simply not present on these facts.

. With an analysis that goes beyond a simple, "yes, it does.”